USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/20/22

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA

-against-

JESUS HILARIO-BELLO,

Defendant.

No. 11 Cr. 755 (JFK)
No. 16 Civ. 4971 (JFK)
No. 19 Civ. 6964 (JFK)

**OPINION & ORDER**

APPEARANCES

FOR DEFENDANT JESUS HILARIO-BELLO:
Pro Se

FOR THE UNITED STATES OF AMERICA:
Jacob R. Fiddelman
U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOHN F. KEENAN, United States District Judge:**

Before the Court is pro se Defendant-Petitioner Hilario-Bello's ("Hilario-Bello") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255(a). The Government opposes the motion. For the reasons set forth below, Hilario-Bello's motion is DENIED.

**I. Background**

On October 11, 2013, Hilario-Bello was found guilty by a jury of one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Count One); one count of conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201 (Count Two); two counts of substantive Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Counts Eight and Thirteen);

one count of using, possessing, and brandishing a firearm during and in relation to the substantive robbery charged in Count Thirteen, in violation of 18 U.S.C. § 924(c) (Count Fourteen); and one count of conspiracy to distribute and possess with intent to distribute narcotics, in violation of 21 U.S.C. § 846 (Count Fifteen). (Verdict Form, ECF No. 163.) The charges stemmed from Hilario-Bello's role in a violent armed robbery crew that, from at least December 2009 through May 2011, targeted drug dealers and business owners in New York City and Nassau County, New York. (Presentence Report ("PSR") ¶¶ 2, 24.)

During a three-week trial, the Government offered evidence that Hilario-Bello participated in three violent robberies and kidnappings, which were referred to at trial as the "Teacher" robbery and kidnapping (charged in Counts One and Two), the "Barber" robbery and related narcotics distribution conspiracy (charged in Counts Eight and Fifteen), and the "Euros" robbery (charged in Counts Thirteen and Fourteen).[1] (Government Memorandum in Opposition ("Mem. in Oppo."), ECF No. 433 at 2.) The Government's evidence included, among other things, the testimony of victims and cooperating co-conspirators. (Id.)

---

[1] The Court presumes the parties' familiarity with the facts of the various robberies, which are described in detail in the Court's February 24, 2014, Opinion and Order denying Hilario-Bello's motion for judgment of acquittal and motion for a new trial. See United States v. Rodriguez, No. 11 Cr. 755 (JFK), 2014 WL 715614, at *1 (S.D.N.Y. Feb. 24, 2014), aff'd, 761 F. App'x 53 (2d Cir. 2019).

On December 25, 2013, Hilario-Bello and one of his co-defendants, Jovanny Rodriguez, filed a motion for a judgment of acquittal and a new trial pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure, respectively. (Motion for Acquittal and New Trial, ECF No. 228). By Opinion and Order dated February 24, 2014, the Court denied Hilario-Bello's motions, noting that "the evidence [was] sufficient to support [his] conviction on all counts." United States v. Rodriguez, No. 11 Cr. 755 (JFK), 2014 WL 715614, at *11 (S.D.N.Y. Feb. 24, 2014), aff'd, 761 F. App'x 53 (2d Cir. 2019). The Court sentenced Hilario-Bello to a term of 235 months' imprisonment. (Sentencing Transcript, ECF No. 292 at 9:20.)

On May 27, 2014, Hilario-Bello appealed his conviction to the Second Circuit, arguing that the indictment in his case ("Indictment") was not sufficiently specific and the Court deprived him of his due process right to a fair trial. Specifically, Hilario-Bello argued that the Court (1) improperly vouched for a cooperator, (2) provided erroneous instructions to the jury, (3) improperly precluded certain areas of cross examination, (4) and improperly held multiple off-the-record conferences. See United States v. Rodriguez, 761 F. App'x 53, 58 (2d Cir. 2019), vacated on other grounds Minaya v. United States, --- U.S. ---, 140 S. Ct. 463 (2019). On February 5,

2019, the Second Circuit issued a Mandate affirming Rodriguez's judgment of conviction in its entirety. Id.

On June 26, 2015, the Supreme Court decided Johnson v. United States, 576 U.S. 591 (2015), and struck down the so-called "residual clause" of the Armed Career Criminal Act, 18 U.S.C § 924(2)(B)(ii), as unconstitutionally vague. On June 23, 2016, Christopher A. Flood ("Flood"), an attorney with the Federal Defenders of New York, entered an appearance for Hilario-Bello. (ECF No. 361.) The following day, Flood filed a § 2255 motion ("2016 Motion") to vacate Hilario-Bello's § 924(c) conviction pursuant to Johnson. (ECF No. 362.) Consistent with Chief Judge McMahon's standing order, In re Petitions Under 28 U.S.C §§ 2255 and 2241 in Light of Johnson v. United States, 16 Misc. 217 (S.D.N.Y. Jun. 8, 2016), the Court stayed consideration of the 2016 Motion pending the disposition of certain cases addressing the constitutionality of § 924(c). (ECF No. 386.)

On July 24, 2019, Hilario-Bello filed the instant pro se motion ("Motion") to vacate his sentence pursuant to 28 U.S.C. § 2255. (ECF Nos. 412, 413.) In his Motion, Hilario-Bello argues that his conviction must be vacated because (1) his trial counsel was constitutionally ineffective, (2) the Indictment in his case was legally insufficient, and (3) his § 924(c) conviction on Count Fourteen is invalid following the Supreme

Court's decision in United States v. Davis, --- U.S. ---, 139 S. Ct. 2319 (2019).[2] (Memorandum in Support ("Mem. in Support"), ECF No. 413.) On January 6, 2020, the Government filed a memorandum in opposition ("Memorandum in Opposition") to the Motion. (Memorandum in Opposition ("Mem. in Oppo."), ECF No. 433.) On February 11, 2020, Hilario-Bello filed a Reply. (Reply, ECF No. 435.) Due to the nature of Hilario-Bello's claims, the Court ordered that his trial counsel, Steven F. Pugliese, submit an affidavit in response to Hilario-Bello's ineffective assistance of counsel claims. (ECF No. 515.) The Court received the affidavit on June 13, 2022.

## II. Discussion

### A. Applicable Law

Under 28 U.S.C. § 2255(a), a federal prisoner may collaterally challenge his sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States." To obtain relief under § 2255, a petitioner must establish "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73

[2] Because Hilario-Bello's § 924(c) claim in the instant motion is identical to the claim he raised in the counseled 2016 Motion, the Court resolves both motions in this Opinion and Order.

F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). Pursuant to § 2255(b), a district court is required to hold an evidentiary proceeding "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). The Second Circuit, in turn, has interpreted this provision to require a hearing where the petitioner pleads a "'plausible' claim of ineffective assistance of counsel." Raysor v. United States, 647 F.3d 491, 494 (2d Cir. 2011) (quoting Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009)). "It is within the district court's discretion to determine the scope and nature of a [§ 2255(b)] hearing. . . . Thus, when the judge who tried the underlying proceeding[] also presides over a § 2255 motion, a full-blown evidentiary hearing may not be necessary." Id. (citation omitted.) "'Bald allegations' unsupported by evidentiary facts do not" warrant a hearing. Puglisi, 586 F.3d at 213 (quoting Newfield v. United States, 565 F.2d 203, 207 (2d Cir. 1977)).

To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 669, 688–94 (1984). Under

the first prong of the Strickland test, "the proper standard for attorney performance is that of reasonably effective assistance." Id. at 687. In applying this standard, the "court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 689). The burden is on the defendant to show that his counsel "'made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" Harrington v. Richter, 562 U.S. 86, 105 (2011) (quoting Strickland, 466 U.S. at 687).

Under the second prong of the Strickland test, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. . . . The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94. In this context, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Accordingly, "the prejudice component of the Strickland

test . . . focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993). Finally, the Court notes that pro se litigants, such as Hilario-Bello, "are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'" Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)).

**B. Application**

**1. Ineffective Assistance of Counsel**

Hilario-Bello raises three arguments in support of his claim that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel. First, he argues that his trial attorney, Steven F. Pugliese ("Pugliese"), failed to effectively cross-examine the Government's cooperating witnesses at trial. Second, he argues that Pugliese failed to object to the Court's allegedly erroneous jury charge during an off-the-record conference that was purportedly held by the Court during the trial. Finally, he argues that Pugliese was ineffective because he failed to present certain affirmative defenses and refrained from calling an exculpatory witness. In its Memorandum in Opposition, the Government argues that Hilario-Bello's ineffective assistance claims fail under Strickland

because he has "fail[ed] to establish that his trial counsel was defective or that he was prejudiced." (Mem. in Oppo. at 1.) The Court agrees with the Government and declines to grant a hearing on Hilario-Bello's ineffective assistance claims because "the motion and the files and records of the case conclusively show that" he is not entitled to any relief. 28 U.S.C. § 2255(b). The Court addresses his three arguments in turn.

**a. Cross-Examination of Cooperating Witnesses**

Hilario-Bello first argues that Pugliese's representation was constitutionally ineffective because his cross-examinations of the Government's cooperating witnesses were inadequate and, in one particular instance, affirmatively harmed his defense. According to Hilario-Bello, Pugliese did not properly prepare for the cross-examinations and failed to question the witnesses about their cooperation agreements and the benefits they hoped to receive from the Government. He further argues that during the cross-examination of one cooperating witness, Pugliese unnecessarily elicited incriminating testimony about an uncharged robbery that he and the cooperator had committed. These claims are belied by the record and fall well short of satisfying the requirements of Strickland.

"[T]he conduct of witness cross-examination is generally viewed as a matter of trial strategy, and, as such, is virtually

unchallengeable 'unless there is no . . . tactical justification for the course taken.'" Harris v. Artuz, 100 F. App'x 56, 57 (2d Cir. 2004) (summary order) (quoting United States v. Luciano, 158 F.3d 655, 660 (2d. Cir. 1998)); see also Love v. McCray, 165 F. App'x 48, 49 (2d Cir. 2006) (summary order) (presumption that defense counsel's actions were sound trial strategy "operates with particular force when the conduct at issue relates to counsel's conduct of cross-examination"). Moreover, "[r]eviewing courts are particularly hesitant to second-guess counsel's cross-examination tactics," because "counsel must often rely on trial instinct and human insight in making on-the-spot decisions" to further their case. Harris, 100 F. App'x at 58.

Here, the record demonstrates that Pugliese's cross-examinations were thorough and tailored toward impeaching the credibility of the cooperators and calling into question the veracity of their testimony. Contrary to Hilario-Bello's claims, Pugliese questioned each of the cooperators about the maximum sentences they faced, their incentives to lie, and their extensive criminal histories. (See e.g., Trial Transcript ("Trial Tr.") at 574:7–581:7 ("So you're hoping that the government will write a letter which the court will accept and find it appropriate to give you a sentence of time-served, is that right?"); Id. at 916:13–15 ("So the government gets to

decide if your testimony was truthful for purposes of [recommending a reduced sentence], right?"); Id. at 1083:24–1084:1 ("And you signed a cooperation agreement because it satisfied your needs to get a sentence of time served, isn't that correct?").) Additionally, there was nothing objectively unreasonable about the line of questioning that elicited testimony about Hilario-Bello's uncharged robbery. As the transcript makes clear, Pugliese was attempting to establish that the cooperator, Domingo Bautista, had withheld certain information from the Government and was, therefore, an unreliable witness.

> PUGLIESE: There are two jobs. If you remember a third job, you say [Hilario-Bello] was involved in?
>
> BAUTISTA: There was a job that [Hilario-Bello] and I did, and I cleared it up here but it has not come up here.
>
> PUGLIESE: In other words, something you didn't tell the government about?

(Trial Tr. at 416:12–15.) Hilario-Bello's claims concerning Pugliese's cross-examinations are meritless and "fail[] to overcome the presumption that counsel's choices on cross-examination might be considered sound trial strategy." Drayer v. United States, 50 F. Supp. 3d 382, 393 (E.D.N.Y. 2014) (internal quotation marks and citations omitted). Furthermore, he has failed to demonstrate that the outcome of the trial would have been different had Pugliese employed a different line of

questioning. See Rodriguez v. United States, No. 14 Civ. 4628 (CSH), 2017 WL 6404900, at *23 (S.D.N.Y. Dec. 13, 2017), aff'd, 767 F. App'x 160 (2d Cir. 2019). Accordingly, Hilario-Bello's first ineffective assistance claim fails.

**b. Failure to Object to the Court's Jury Charge**

Hilario-Bello next argues that Pugliese's performance was constitutionally deficient because he failed to object to the Court's allegedly erroneous jury charge. In his motion, Hilario-Bello asserts that the Court held eleven "off-the-record" conferences with counsel during the three-week trial. (Mem. in Support at 17–18.) He further alleges that the jury charge was discussed and finalized during one of the unrecorded conferences. His claim appears to be based entirely on the fact that on the morning of October 9, 2013, the twelfth day of the trial, the Court stated: "We have had discussion about the requests to charge prior to this morning." (Trial Tr. at 1381:2–3.) Relying on that statement alone, Hilario-Bello alleges that Pugliese was ineffective because he either failed to object to the Court's jury charge or only did so "at the many off-the-record conferences ordered by the Judge" and failed to insist that his objections be placed on the record. (Mem. in Support at 18.) This claim is meritless.

As an initial matter, the trial transcript demonstrates that discussions concerning the jury charge took place on the record, including at various times before October 9, 2013. (See e.g., Trial Tr. at 1044:13-14 ("I have prepared what I consider the first draft of the verdict charge."); Id. at 1198:5-8 ("I just think we should do a little work on the charge . . . If anybody has the charge here, get the charge out."); Id. at 1208:4-5 ("I want to talk with you briefly about the verdict charge."); Id. at 1296:13-16 ("I am going to ask [the courtroom deputy] to distribute three copies of the proposed verdict charge to the defense. One for each and here are two additional copies to give to the government."); Id. at 1298:4-5 ("Could I take up the jury charge just a moment?").) Additionally, as the following colloquy demonstrates, discussions regarding the parties' objections to the charge also occurred on the record.

> THE COURT: Does anybody on the defense side have any exceptions to the requests to charge as I finally ruled on them so far—I am not talking about the one that I received this morning. We will get to that right now, but up to now are there any exceptions?
>
> PUGLIESE: No, Judge.

(Trial Tr. 1382:22-1383:4.)

Finally, the Court notes that the "off-the-record conferences" identified by Hilario-Bello appear to be discussions between the Court and counsel about administrative or scheduling issues. Each of the identified off-the-record

discussions is followed by a comment in the transcript about scheduling or an explanation from the Court that the sidebar related to scheduling. Accordingly, Pugliese's performance with respect to the jury charge does not support a claim of ineffective assistance.

**c. Failure to Present Exculpatory Evidence**

Finally, Hilario-Bello claims that Pugliese was ineffective because he failed to call an alibi witness and did not introduce exculpatory evidence that was in his possession. Specifically, Hilario-Bello alleges that Pugliese failed to call "a woman named Wendy" who would have testified to his whereabouts on the day of the Euros robbery. (Mem. in Supp. at 19.) He further alleges that Pugliese failed to introduce evidence that the vehicle used during the Euros robbery had been "reported . . . stolen prior to the crime being committed." (Id.) Similar to his other claims of ineffective assistance, these claims lack merit.

"Whether to offer evidence and call particular witnesses 'is peculiarly a question of trial strategy which courts will practically never second-guess.'" United States v. Choudhry, 649 F. App'x 60, 61 (2d Cir. 2016) (summary order) (quoting United States ex rel. Walker v. Henderson, 492 F.2d 1311, 1314 (2d Cir. 1974)); see also United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000) ("Actions or omissions by counsel that 'might

be considered sound trial strategy' do not constitute ineffective assistance." (quoting Strickland, 466 U.S. at 689)). Moreover, "the tactical decision of whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional presentation." United States v. Schmidt, 105 F.3d 82, 90 (2d Cir. 1997).

Here, Hilario-Bello has failed to establish that Pugliese's "representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. As an initial matter, evidence that Hilario-Bello reported his van stolen the day before the robbery was introduced into evidence by stipulation. (See Trial Tr. at 1167:20–1168:10 ("[T]he United States and all three defendants agree that . . . If called to testify, an [NYPD] officer . . . would testify . . . [that] [o]n or about June 10, 2011, . . . Hilario-Bello[] filed a police report stating that his vehicle, a 1997 red Quest van, . . . was stolen[.]"). As for the testimony of "a woman named Wendy," Hilario-Bello offers little more than his "self-serving, uncorroborated and improbable assertion[]" that her testimony would have been exculpatory. Krasniqi v. United States, 195 F. Supp. 3d 621, 634 (S.D.N.Y. 2016). Courts view "claims of ineffective assistance of counsel skeptically when the only evidence of the import of a missing witness' testimony is from the defendant." Croney v. Scully, No. 86 Civ. 4335 (CPS), 1988

WL 69766, at *2 (E.D.N.Y. June 13, 1988) (citation omitted), aff'd, 880 F.2d 1318 (2d Cir. 1989). "Without more than conclusory statements as to the would-be-witness' testimony, [a defendant] cannot present a plausible claim of ineffective assistance based on [counsel's] failure to call the witness to testify." Lopez v. United States, 792 F. App'x 32, 38 (2d Cir. 2019) (summary order). Hilario-Bello has failed to offer any evidence in support of his claim that the potential alibi witness would have testified on his behalf. Absent such evidence, Hilario-Bello's ineffective assistance claim fails. See Venkataram v. United States, No. 11 Civ. 6503 (RPP), 2013 WL 5298461, at *8 (S.D.N.Y. Sept. 20, 2013) (dismissing ineffective assistance of counsel claim where "there has been no evidence, beyond [defendant's] speculation, that [an uncalled witness'] testimony would have impacted [defendant's] sentence or been helpful to [defendant] in any way"); see also Carneglia v. United States, No. 03 Civ. 6388, 2006 WL 148908, at *4 (E.D.N.Y. Jan. 18, 2006) (rejecting challenge because "petitioner has not provided affidavits from the potential witnesses nor any assurance they would have appeared at trial had counsel interviewed them").

In sum, the Court concludes that Hilario-Bello has failed to establish that Pugliese's representation was constitutionally deficient. Accordingly, Hilario-Bello's ineffective assistance

of counsel claims are dismissed. See Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

**2. Challenge to the Sufficiency of the Indictment**

In addition to his various ineffective assistance claims, Hilario-Bello argues that his conviction must be vacated because Count Two of the Indictment incorrectly alleged that the Barber robbery took place "in the vicinity of 230th Street and Sedgewick Avenue, Bronx, New York." (Mem. in Supp. at 16.) Hilario-Bello argues that because 230th Street and Sedgewick Avenue do not intersect, the Indictment failed to adequately inform him of the charges against him in violation of his Fifth Amendment due process rights. (Id. at 20.)

As noted previously, Hilario-Bello challenged the sufficiency of the Indictment on direct appeal to the Second Circuit. In rejecting his claim, the Second Circuit held that "the [I]ndictment's specification of the vicinity and approximate dates of the alleged crimes was sufficient to fairly inform [Hilario-Bello] of the charges and to enable [him] to defend against the charges and invoke a double jeopardy defense should [he] be indicted again for the same acts." Rodriguez, 761 F. App'x at 57. Because Hilario-Bello previously raised this meritless argument on direct appeal, it is procedurally

barred and, therefore, rejected.[3] See United States v. Sanin, 252 F.3d 79, 83 (2d Cir. 2001) (noting that § 2255 motion cannot be used as a vehicle to "relitigate claims that were actually raised and considered on direct appeal").

### 3. Challenge to Conviction Under 18 U.S.C. § 924(C)

Finally, Hilario-Bello argues that his conviction for violating 18 U.S.C. § 924(c) must be vacated in light of the Supreme Court's decision in United States v. Davis, --- U.S. ---, 139 S. Ct. 2319, 2324 (2019). Specifically, he argues that his § 924(c) conviction is unconstitutional because it was predicated on an offense that no longer qualifies as a "crime of violence" following Davis. In response, the Government argues that Hilario-Bello is procedurally barred from raising this claim because he failed to raise it on direct appeal. The Government additionally argues that the claim is meritless because Hilario-Bello's § 924(c) conviction was based on a valid predicate offense. The Court agrees with the Government.

Hilario-Bello's claim is procedurally defaulted because he failed to challenge his § 924(c) conviction on appeal and he is

[3] In passing, Hilario-Bello appears to argue that Pugliese was constitutionally ineffective because he never challenged the specificity of the Indictment during the trial. Because the Indictment was sufficient and any motion to dismiss the Indictment would have been denied, this claim is meritless. See United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995) ("[T]he failure to make a meritless argument does not rise to the level of ineffective assistance"), cert. denied, 516 U.S. 927 (1995).

unable to show either cause for his failure or actual innocence. See Pagan v. United States, No. 10 Cr. 392-1 (CS), 2022 WL 1124924, at *2 (S.D.N.Y. Apr. 14, 2022) ("Failure to raise a claim on direct appeal forecloses review of that claim under § 2255, unless the [defendant] can show either cause and actual prejudice, or actual innocence." (citing Bousley v. United States, 523 U.S. 614, 622-23 (1998))). The procedural default rule applies even when a new substantive rule of federal criminal law is announced after the defendant's conviction. See Bousley, 523 U.S. at 621 (holding defendant's claim was procedurally defaulted despite retroactive application of new substantive criminal rule). Here, Hilario-Bello's own co-defendant, Oscar Minaya, challenged his § 924(c) conviction on vagueness grounds in his direct appeal to the Second Circuit. See Rodriguez, 761 F. App'x at 63. Additionally, as noted above, Hilario-Bello challenged his § 924(c) conviction under Johnson in his initial § 2255 motion, which was filed before the Second Circuit decided his direct appeal. Accordingly, because Hilario-Bello could have raised this claim on direct appeal but failed to do so, he is unable to show cause for his procedural default. See Thorn v. United States, 659 F.3d 227, 233–34 (2d Cir. 2011) (claim available where, by the time of petitioner's direct appeal, other defense attorneys had raised the argument); see also United States v. McCarron, No. 15 Cr. 257 (ADS), 2020

WL 2572197, at *5 (E.D.N.Y. May 20, 2020) ("Many courts in this Circuit have held that defendants' failure to challenge their conviction pursuant to Johnson on direct appeal precludes reliance on Davis in a collateral proceeding, because Johnson provided all of the 'tools to construct' a constitutional vagueness challenge to a conviction under the residual clause prior to Davis." (citations omitted)).

Additionally, Hilario-Bello is unable to establish actual innocence. To demonstrate actual innocence, Hilario-Bello must prove his "factual innocence, not mere legal insufficiency," and "demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley, 523 U.S. at 623 (quoting Schlup v. Delo, 513 U.S. 298, 327–28 (1995)). As this Court noted in its Opinion and Order denying Hilario-Bello's post-trial motions, the Government presented "sufficient evidence to support [Hilario-Bello's] convictions on Counts Thirteen and Fourteen." See Rodriguez, 2014 WL 715614, at *10. At trial, the testimony of Hilario-Bello's co-conspirators established that he brought a gun to the Euros robbery and that he was responsible for driving his co-conspirators to and from the scene of the crime. See Id. Given the weight of the Government's evidence, Hilario-Bello is unable to establish actual innocence. As a result, his § 924(c) claim is procedurally defaulted. See Thorn, 659 F.3d at 231.

Hilario-Bello's claim also fails on the merits. Section 924(c) imposes a mandatory, consecutive sentence for "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). Section 924(c)(3), in turn, defines "crime of violence" as a felony that either "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another," or "(B) . . . that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3). In United States v. Davis, --- U.S. ---, 139 S. Ct. 2319, 2324 (2019), the United States Supreme Court struck down the so-called "risk-of-force clause" or "residual clause" of § 924(c)(3)(B) as unconstitutionally vague. As a result, a § 924(c) conviction remains valid only if the predicate offense "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).

Count Fourteen of the Indictment charged Hilario-Bello with possessing and brandishing a firearm during and in relation to the Hobbs Act robbery charged in Count Thirteen. In United States v. Hill, 890 F.3d 51 (2d Cir. 2018), cert. denied, 139 S. Ct. 844 (2019), the Second Circuit held that completed Hobbs Act

robbery is a "crime of violence" under the so-called "elements clause" of § 924(c)(3)(A). Hill, 890 F.3d at 60 ("Hobbs Act robbery 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'" (quoting 18 U.S.C. § 924(c)(3)(A))). Although Hill was decided before Davis, the Second Circuit has repeatedly recognized that completed Hobbs Act robbery remains a valid predicate offense following Davis. See, e.g., United States v. Walker, 789 F. App'x 241, 245 (2d Cir. 2019) (holding that "[o]ur prior holding in [Hill], that substantive Hobbs Act robbery is a crime of violence under the elements clause of § 924(c)(3)(A), is unaffected by Davis . . ."); see also United States v. Felder, 993 F.3d 57, 79 (2d Cir. 2021) (noting Hobbs Act robbery is crime of violence under the elements clause). Accordingly, because Hilario-Bello's § 924(c) conviction was predicated on an offense that remains a "crime of violence" within the meaning of § 924(c)(3)(A), his claim under Johnson and Davis, including the claim articulated in his 2016 Motion, is meritless. See United States v. Felder, 993 F.3d 57, 81 (2d Cir. 2021).

**III. Conclusion**

For the foregoing reasons, Hilario-Bello's motions to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 are DENIED. The Court declines to issue a certificate of

appealability, as Hilario-Bello has not made a substantial showing of a denial of a constitutional right. See Matthews v. United States, 682 F.3d 180, 185 (2d Cir. 2012). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and permission to proceed in forma pauperis is DENIED. The Clerk of Court is respectfully directed to terminate the motions docketed at No. 11 Cr. 755, ECF Nos. 362 and 412, and to close the cases at No. 16 Civ. 4971 and No. 19 Civ. 6964.

**SO ORDERED.**

Dated: New York, New York
July 20, 2022

John F. Keenan
John F. Keenan
United States District Judge